IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL S. SUGGS, | ) |
| | ) |
| Plaintiff, | ) No. 23-cv-2327 |
| | ) |
| v. | ) Judge Jeffrey I. Cummings |
| | ) |
| CITY OF CHICAGO OFFICER DICERA, | ) |
| BADGE NO. 14902 and OFFICER KOEPPEN, | ) |
| BADGE NO. 18927, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

     Plaintiff Michael Suggs brings this action under 42 U.S.C. §1983 against Chicago Police Officers Dante Koeppen and Angelo Dicera, ("defendants" or the "Officers"), alleging a violation of his right to be free from excessive force during a November 18, 2021 arrest that followed his flight from the scene of a traffic stop. Both Suggs and the Officers simultaneously moved for summary judgment on January 27, 2025. (Dckt. ##70, 73). Suggs argues that he is entitled to summary judgment because Koeppen used unreasonable force by slamming his head on the ground while arresting him. Defendants deny the use of such force but argue that, even if it occurred, the alleged use of force objectively reasonable Suggs was actively resisting arrest. Defendants additionally argue that they are entitled to qualified immunity. For the following reasons, the Court grants defendants' motion for summary judgment, (Dckt. #70), and denies Suggs's motion for summary judgment, (Dckt. #73).

**I.    LEGAL STANDARD**

     Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome-determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). Where (as here), cross-motions for summary judgment have been filed, courts "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647 (7th Cir. 2016) (cleaned up).

II.     FACTUAL RECORD

The following facts are undisputed unless otherwise noted.

In the early morning of November 18, 2021, Suggs was driving in the vicinity of 63rd Street and Calumet Avenue when defendants activated their police car's emergency lights to pull Suggs's car over for a traffic stop. (Plaintiff's Response to Defendants' Statement of Facts ("DSOF Resp."), Dckt. #85, ¶¶4, 7; Defendant's Response to Plaintiff's Statement of Facts ("PSOF Resp."), Dckt. #81, ¶¶1–2)). Defendants suspected Suggs of a municipal violation: namely, driving with an obstructed view due to an air freshener tree hanging from his rearview mirror. (DSOF Resp. ¶¶4–5; PSOF Resp. ¶2). Suggs exited his vehicle wearing a ski mask that covered his head and face, but which had a cut-out for his eyes and showed a sliver of his forehead, and fled from defendants on foot. (DSOF Resp. ¶¶7, 46; PSOF Resp. ¶3; Dckt. #80 Exs. 4 & 5). Defendants pursued Suggs, believing him to be concealing a firearm. (DSOF Resp. ¶¶9–10). One of the defendants yelled "stop" and "police" but Suggs kept running. (*Id.* ¶11). While he was fleeing, Suggs tripped and dropped a handgun and an extended magazine. (*Id.* ¶12; PSOF Resp. ¶¶5–7). Koeppen recovered the handgun while chasing Suggs and yelled, "I got it." (DSOF Resp. ¶14; PSOF Resp. ¶9).

Suggs reached a fence and attempted to climb it to avoid arrest. (DSOF Resp. ¶16; PSOF Resp. ¶10). Defendants caught up to Suggs and Dicera "grabbed Plaintiff around his mid-section and pulled Plaintiff off the fence." (DSOF Resp. ¶18). Dicera called out "[h]elp, help," while Koeppen unloaded the handgun Suggs dropped during the chase. (*Id.* ¶19). With Koeppen's help, Dicera maneuvered Suggs toward the ground. (DSOF Resp. ¶22; PSOF Resp. ¶11). Koeppen made the verbal command, "[s]top, just stop. Get on the fuckin' ground." (DSOF Resp. ¶21). As Dicera maneuvered Suggs to the ground, Suggs repeatedly stated: "I'm down, I'm down, I'm down," and that he was not resisting. (*Id.* ¶22; PSOF Resp. ¶12). Koeppen reiterated his command to "[g]et on the ground, all the way, all the way." (DSOF Resp. ¶23).

3

Defendants got Suggs on the ground on his stomach with Dicera straddling Suggs's hip area and Dicera's knees touching the ground on either side of Suggs's body, while Koeppen held Suggs's left arm. (PSOF Resp. ¶¶13–15). Koeppen again told Suggs "[a]ll the way. Stop." (DSOF Resp. ¶25). The body worn camera ("BWC") footage shows that Suggs stayed face-down on the ground on his stomach for approximately two seconds. (Dckt. #80, Ex. 4). Dicera removed his hands from Suggs's body at this point. (*Id.*). Suggs then "raised his head and upper torso" off the ground,[1] causing Koeppen to think that Suggs was going to flee again.[2] (*Id.*; DSOF Resp. ¶¶26–27). Suggs does not offer any testimony or other evidence to support why he raised his head and torso off the ground. In response to Suggs lifting his head and torso, Koeppen shouted, "[g]et on the fuckin ground, motherfucker!" (DSOF Resp. ¶28). Suggs admits that he was still resisting arrest at this time. (*Id.* ¶36).

What happened next is in dispute. According to Suggs, Koeppen next "slammed Plaintiff's head to the ground." (PSOF Resp. ¶21). Suggs does *not* offer his own testimony to support this factual assertion.[3] Instead, Suggs relies on the video footage from Koeppen's BWC and an edited video (the "Video") that his counsel created by *combining* color-adjusted, slowed

---

[1] Although Suggs contends that he only "lifted his head," the BWC footage unequivocally shows that he raised *both* his head and torso off the ground, and the footage therefore trumps Suggs's contention to the contrary. (PSOF Resp. ¶18; Dckt. #80, Exs. 4 & 5); *Gant v. Hartman*, 924 F.3d 445, 450 (7th Cir. 2019).

[2] Suggs disputes this fact and cites to the BWC footage and Koeppen's deposition testimony in which Koeppen states that he had control over Suggs's left arm, (DSOF Resp. ¶27 (citing Dckt. #71-2 at 20–22, 37), but neither contradicts defendants' cited evidence which supports this material fact, (DSOF Resp. ¶27 (citing Dckt. #71-2 at 22 (Koeppen testifying that Suggs "attempted to raise his upper body to defeat arrest," and Koeppen "believed he was going to flee again."))); *see United States v. Bogan*, 267 F.3d 614, 619 (7th Cir. 2001) (affirming the admission of lay opinion testimony under Rule 701 that was rationally based on the witness's observation of an incident).

[3] During his deposition, Suggs testified that one of the defendants struck him on the head with a blunt object and he neither knew which Officer struck him nor saw the blunt object used to strike him because both Officers were "wrestling with him from behind." (DSOF Resp. ¶¶35, 38–40). Suggs has since abandoned any reliance on this testimony. (Dckt. #84 at 5).

4

down portions of the video from the BWCs of both Koeppen *and* Dicera. (*Id.*; Dckt. #75-2).[4] In their response, the Officers—who do not dispute that Koeppen forced Suggs back down to the ground—assert that Koeppen's BWC footage does not show that Koeppen slammed Suggs's head into the ground. (Dckt. #82 at 8). Suggs does not challenge the Officers' assertion in his reply, and the Court's review of Koeppen's BWC footage confirms that the Officers are correct.

The Officers further assert that the Video is inadmissible pursuant to Federal Rule of Evidence 1002 (which provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise") and cannot be considered on summary judgment. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 576 (7th Cir. 2021) (to defeat summary judgment a party may only rely on admissible evidence). Suggs responds by asserting that Rule 1002 is inapplicable because the Video is not offered to prove the "content" of the BWC footage and that the Video is instead admissible pursuant to Federal Rule of Evidence 1003, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." (Dckt. #92 at 2–4 (citing cases)).

Suggs's argument is unpersuasive. To begin, Rule 1003 is facially inapplicable because Suggs does not claim that the Video is a "duplicate" of the "original" footage of either BWC. *See Payne v. Myers*, No. 14-CV-39-GKF-TLW, 2016 WL 3884169, at *6 (N.D.Okla. Jan. 21, 2016), *quoting* Fed.R.Evid. 1001(4) ("'A "duplicate" means a counterpart produced by a

---

[4] In particular, plaintiff's counsel created the Video "by performing the following actions: using Adobe Premiere Pro 2025 to slow down the footage, insert frame holds, adjust the color of portions of Exhibits 4 [Koeppen's BWC footage] and 5 [Dicera's BWC footage], merge them together; and then using Vimeo to add text and arrows to the merged video." (Dckt. #75-2).

5

mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original.'"); 6 WEINSTEIN'S FEDERAL EVIDENCE §1001.09[1], at 1001–31 (2d ed. 2019) ("The basic test for defining and establishing limits upon a 'duplicate' is whether the process used is designed to insure an accurate reproduction of the original."). Instead, plaintiff's counsel explains that the Video is an amalgamation of unspecified portions of the footage from *both* BWCs. (Dckt. #75-2; Dckt. #92 at 3 ("Plaintiff's attorney enhanced Defendants Koeppen and Dicera's respective BWC footage and combined parts to improve the clarity of the incident.")). Notably, counsel does not attest that the Video accurately reflects the original BWC footage. *Cf. Snyder v. Tiller*, No. 8 CV 470, 2010 WL 3522580, at *7 (N.D.Ind. Aug. 30, 2010) ("[T]he enhanced portion of the video must still be authenticated by the individual who made the enhancements. . . . That process commonly includes a description of the changes made and an attestation that the enhanced version accurately represents the original.") (cleaned up).

None of the cases cited by Suggs supports the admissibility of a post-incident video that—like the Video here—is not an accurate duplicate of the original footage of the incident. *Cf. United States v. Seifert*, 445 F.3d 1043, 1045 (8th Cir. 2006) (rejecting defendant's assertion that "the district court erred in admitting the enhanced video because no one could know for certain whether it accurately reflects the original"); *United States v. Beeler*, 62 F.Supp.2d 136, 149 (D.Me. 1999) (denying defendant's motion to exclude evidence where the court was satisfied "that the edited and enhanced versions of the . . . surveillance videotape are accurate, authentic, and trustworthy representations of the original tape"). As such, the Video is not admissible under Rule 1003.

Furthermore, even if the Video were admissible, Suggs's claim that it shows Koeppen placing his hand on Suggs's head and moving it toward the ground is not substantiated by the Court's review of the Video.[5] Indeed, despite viewing the Video multiple times, the Court cannot discern what Suggs claims that the Video depicts. . As such, the Video does not have sufficient clarity to place Suggs's "'version of events beyond the level of mere speculation or conjecture'" as is required to create an issue of fact sufficient to deny the Officers' motion for summary judgment, let alone to support the entry of summary judgment in his favor. *See Pam v. City of Evansville*, 154 F.4th 523, 528 (7th Cir. 2025), *quoting Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025). In sum: Suggs has offered no admissible evidence to support his assertion that Koeppen slammed his head into the ground.

After Koeppen forced Suggs back to the ground, Suggs alleges that he was knocked unconscious and the Officers were able to handcuff him. (PSOF Resp. ¶22; DSOF Resp. ¶29). The undisputed evidence shows that Suggs had no blood on his forehead before he raised his torso and head up off the ground and that he had blood on his forehead after he was forced back to the ground and handcuffed by the Officers. (PSOF Resp. ¶24; Dckt. #74 at 7–8). This evidence supports a reasonable inference that Koeppen's use of force to take Suggs back down to the ground caused Suggs to sustain an injury to his head and momentarily knocked him unconscious. The Officers, who admit that blood was running down Suggs's forehead after he was handcuffed, took Suggs to the University of Chicago Hospital where he was treated for a laceration to his scalp and received three staples to repair his head wound. (PSOF Resp. ¶¶19,

---

[5] Notably, Suggs admits that the Video does not show the moment that Koeppen forced him back to the ground. (Dckt. #74 at 7 (the Video "shows Defendant Koeppen's hand on Plaintiff's head while screaming, 'Get on the ground motherfucker!' as the camera's view moves toward the ground and then turns dark."). Nor does the Officers' BWC footage depict this moment. (Dckt. #80, Exs. 4 & 5).

25). Suggs was charged with, and pleaded guilty to, a charge of unlawful possession of a firearm in connection with this incident. (DSOF Resp. ¶48).

### III. ANALYSIS

Suggs brings a Section 1983 claim against Officers Koeppen and Dicera alleging two theories of excessive force, only one of which remains at issue.[6] Suggs's remaining theory of liability concerns Koeppen's alleged use of excessive force when he forced Suggs's head and torso back to the ground after the Officers initially took him down and caused Suggs to sustain a laceration to his forehead. Suggs further asserts that Koeppen had full control over him prior to his use of force, and that Suggs was merely passively resisting by lifting his head and torso off the ground. Koeppen, for his part, argues that he did not slam Suggs's head on the ground, but even presuming *arguendo* that he did, such force would be objectively reasonable because Suggs was actively resisting arrest. Finally, Koeppen argues that he is entitled to qualified immunity.

### A. Qualified Immunity Standard For Excessive Force Claims.

The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "Once the defense is raised, it becomes the plaintiff's burden to defeat it." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (cleaned up). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2]

---

[6] Suggs concedes that summary judgment in the Officers' favor is warranted on his excessive force claim related to the Officers' alleged kicking or pressing against his lower extremities. (Dckt. #84 at 1 ("The Court should grant summary judgment on the lower extremity injury claim.")). Accordingly, the Court grants defendants' motion for summary judgment, (Dckt. #70), related to that theory of liability.

8

whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (cleaned up). "Courts may exercise their discretion when choosing which element to address first." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc).

Here, the Court begins with an analysis of whether Suggs has shown that the right he claims was violated was "clearly established." "We look to Supreme Court caselaw, our own precedent, and surrounding circuits when discerning whether a right was clearly established." *Pam*, 154 F.4th at 530. "Unless no reasonable officer could have thought they were acting lawfully, we must extend immunity." *Id.*

A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: "(1) identify[ing] a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) show[ing] that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021) (cleaned up); *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007).

Suggs's burden on this point is rigorous. As the Seventh Circuit has explained:

> [A] right is clearly established for qualified immunity purposes if its contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. And in order to answer the question beyond debate, the Supreme Court has repeatedly emphasized that the clearly established law must share specific details with the facts of the case at hand. Though to defeat a defendant's assertion of qualified immunity plaintiffs need not produce a case directly on point, defining the applicable law at a high level of generality simply will not do. Only in the rare obvious case will the unlawfulness of the officer's conduct be sufficiently clear without existing precedent . . . addressing similar circumstances. This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

9

*Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (cleaned up).  Moreover, courts "have been 'repeatedly' told not to 'define clearly established law at a high level of generality' and instead look to 'whether the violative nature of particular conduct is clearly established.'" *Pam*, 154 F.4th at 530 (holding that specificity is "especially important in the Fourth Amendment context" because "excessive force cases are highly fact dependent, so we must find existing precedent that 'squarely governs the specific facts at issue'") (cleaned up).

The reasonableness of a use of force is a question of law for the Court to decide.  *See, e.g.*, *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).  Reasonableness is determined by an objective standard that is based on the facts and circumstances presented to the officer at the time of the conduct at issue, rather than the officer's subjective intent.  *Doxtator*, 39 F.4th at 860.  The analysis of the officers' actions must be "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Weinmann v. McClone*, 787 F.3d 444, 448–49 (7th Cir. 2015) (cleaned up).  Moreover, "police are entitled to err on the side of caution when faced with an uncertain or threatening situation."  *Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009).

To determine where a use of force was objectively reasonable, the Court considers the following factors: : (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the information known to the officers at the time of the encounter; (5) the duration of the encounter; (6) whether the individual was armed; and (7) whether there was the need for the officers to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances.  *Graham v. Connor*, 490 U.S. 386,

396 (1989); *Manery v. Lee*, 124 F.4th 1073, 1079 (7th Cir. 2025); *Brumitt v. Smith*, 102 F.4th 444, 447 (7th Cir. 2024); *Smith*, 10 F.4th at 736.

### B. Koeppen Had A Reasonable Belief That Suggs Was Actively Resisting Arrest By Attempting To Flee When He Used Force To Take Suggs Back To The Ground.

The parties dispute how Suggs's actions should be characterized at the moment he raised his head and torso off the ground and Koeppen used force to bring him back down. Although Suggs admits that he was resisting arrest at the time, (DSOF Resp. ¶36), he asserts that he only "passively" resisted and that "it was clearly established that using significant force on passively resisting persons constitutes unreasonable force." (Dckt. #92 at 5–6; Dckt. #84 at 8–9). Koeppen, on the other hand, asserts that his use of force was justified because Suggs was actively resisting arrest by attempting to flee when he raised up off the ground.[7]

The Court need not determine what Suggs was subjectively intending to do when he raised up off the ground. *See Dockery v. Blackburn*, 911 F.3d 458, 463 (7th Cir. 2018) ("Whether [plaintiff] actually intended to resist does not matter."). Instead, "[w]hat matters is how a reasonable officer would construe the circumstances." *Id.* Thus, given that qualified immunity extends to "reasonable misperceptions of fact," Koeppen is entitled to qualified immunity even if he misjudged Suggs's subjective intentions so long as the record shows that he "could have mistakenly, but reasonably, believed certain facts exist[ed] to justify [the] level of force" he used against Suggs. *Pam*, 154 F.4th at 531; *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84

---

[7] *See, e.g.*, *Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020) (holding that plaintiff's active resistance continued when he tried "to pry himself away from the officers" after they took him to the ground); *Snukis v. Taylor*, 145 F.4th 734, 740 (7th Cir. 2025) ("Active resistance" includes "kicking and flailing, declining to follow instructions while acting in a belligerent manner, and swatting an arresting officer's hands away while backpedaling.") (cleaned up); *Anderson v. Estrada*, 140 F.4th 634, 646 (5th Cir. 2025) ("'Pull[ing], twist[ing], turn[ing], or walk[ing]' toward or away from an officer amount to active resistance when those actions frustrate the officer's objective or disobey an officer's order.") (cleaned up).

11

F.4th 807, 828 (9th Cir. 2023) ("Where an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact.") (cleaned up); *A.K.H. by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."); *Gooden v. Howard County*, 954 F.2d 960, 965–66 (4th Cir. 1992) (noting that the question is whether officers held a mistaken but reasonable misperception of the situation).

The pertinent facts, "viewed from the vantage point" of the defendant officers on the scene, *Pam*, 154 F.4th at 533, are as follows. The Officers pulled Suggs over for a traffic stop and Suggs attempted to flee from defendants by exiting his car and taking off on foot, which Suggs admits amounts to active resistance. Defendants pursued him and during the chase, Suggs dropped an extended magazine and a handgun before reaching a chain-link fence. Suggs was trying to climb over the fence when Dicera caught up and pulled Suggs off the fence by his midsection. Defendants struggled with Suggs as they tried to maneuver him to the ground and they shouted an order for him to get "all the way" down. Suggs eventually laid down on the ground for barely a second before he lifted his head and torso up off the ground. Prior to Suggs lifting his body, Koeppen had eased his hold on Suggs and his arms were no longer holding Suggs down. When Suggs suddenly tried to lift his body, Koeppen believed that Suggs was attempting to flee again. Koeppen then used force to take Suggs back down to the ground. At that point, neither Officer knew whether Suggs was armed because they had not yet had the opportunity to frisk Suggs.

Only a few seconds had elapsed between when Suggs's prior attempt to flee ended as he laid down flat on the ground and when he raised himself up. The Seventh Circuit has recognized

that officers are not required to recalibrate their use of force "at the precise second" a threat changes, *Snukis*, 145 F.4th at 741, and they need not "repeatedly reevaluate their use of force throughout an encounter lasting a few seconds to avoid applying extra units of force immediately after a suspect submits." *Brumitt*, 102 F.4th at 448–49 ("There were fewer than four seconds between the moment Brumitt went limp and the moment Smith stopped using force. No case clearly establishes that a reasonable officer must reassess his force that quickly."); *Finkley*, 10 F.4th at 739 ("short-duration, high-stress episode[s] necessitate[] quick decisions in dangerous and uncertain circumstances."); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 733 (7th Cir. 2013) ("To be sure, an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force.").

Finally, although Suggs maintains that he had already surrendered when Koeppen used force to take him back to the ground, a reasonable officer was not required to perceive his act of raising up off the ground in defiance of the officer's command to remain on the ground as an act of surrender. As the Seventh Circuit has held, "[n]o law that we know of require[s] [an officer] to take [the arrestee's] apparent surrender at face value" only a "split-second after" they stop evading capture. *Johnson*, 576 F.3d at 660; *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016) (same); *Shirley v. Rabensteine*, No. 22-2147, 2023 WL 129432, at *2 (7th Cir. Jan. 9, 2023) ("Likewise, the officers here had ample reason to doubt that [plaintiff]—who had actively resisted arrest for hours by car, by foot, and by hiding, who was suddenly dropping onto them from the ceiling, and who might be armed—was sincere."); *Martin v. Rivera*, No. 1:13-cv-00048, 2014 WL 3740051, at *6 (N.D.Ind. July 29, 2014) ("[E]ven if Martin did raise his hands or somehow indicate his intent to surrender in the three seconds between when he was knocked

13

into the car and when Rivera struck him, Rivera would not have been required to take Martin's surrender at face value.").

For all these reasons, the record supports the proposition that Koeppen (who believed Suggs was attempting to flee again) could have reasonably—even if mistakenly—feared that Suggs "would continue his active flight and resistance, potentially with a gun" once he raised his body up off the ground. *Shirley*, 2023 WL 129432, at *2; *Pam*, 154 F.4th at 532 (granting summary judgment after finding that "[r]egardless of whether Pam actually held his firearm prior to the shooting, a reasonable officer could have thought it so"); *Turner*, 979 F.3d at 569 (finding that plaintiff engaged in active resistance when he tried "to pry himself away from the officers" after they took him to the ground).

### C. Koeppen Was Entitled To Use Force To Take Suggs Back Down To The Ground.

"The right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (citing *Graham*, 490 U.S. at 396)); *Catlin v. City of Wheaton*, 574 F.3d 361, 366 (7th Cir. 2009) (same). Indeed, police officers "may use significant force to subdue someone who is actively resisting lawful detention." *Turner*, 979 F.3d at 569; *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013) ("We have repeatedly upheld officers' use of force in the face of suspects resisting arrest.") (citing cases); *see also Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) ("A reasonable officer would have thought that [plaintiff] was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who committed only a minor traffic violation.").

Furthermore, the Seventh Circuit has recognized that "that there is no clearly established rule forbidding a clean takedown to end mild resistance[.]" *Johnson v. Rogers*, 944 F.3d 966, 969

14

(7th Cir. 2019) (citing multiple cases);[8] *Buehler v. Dear*, 27 F.4th 969, 988 (5th Cir. 2022) ("[A] survey of our sister circuits' precedent on this issue turns up '[m]any decisions [that] hold that there is no clearly established rule forbidding a clean takedown [of a suspect] to end mild resistance.'"); *Robles v. Ciarletta*, 797 Fed.Appx. 821, 827–28 (5th Cir. 2019) (holding that, although assault suspect "only passively resisted" arrest, arresting officer did not violate clearly established law by putting suspect's "arm[] behind [his] back, press[ing] him against a fence," and bring him "to the ground where [the officer] put [him] in handcuffs"); *Clemence v. Cnty. of Oneida*, No. 20-CV-947-JDP, 2022 WL 2713374, at *3 (W.D.Wis. July 13, 2022) ("It can be reasonable for officers to use a takedown maneuver in the face of even mild resistance . . ., so it was reasonable for the deputies to bring [plaintiff] to the ground to subdue him.") (cleaned up); *Moss v. Schimp*, No. 3:20-CV-107-MAB, 2022 WL 1443422, at *8 (S.D.Ill. May 6, 2022) ("[A] clean takedown is not excessive when it is used to control an individual who poses a threat or fails to comply with an officer's demands.").

Thus, even if Suggs's act of raising his torso and body up from the ground were properly characterized as "mild resistance" despite Suggs's defiance of the Officers' orders to remain on the ground and the other relevant circumstances detailed above, Koeppen's split-second decision to use force to take him back down to the ground was not objectively unreasonable. This is so even though Suggs sustained a cut to his head and may have been momentarily knocked unconscious when he was returned to the ground. As the Seventh Circuit has held, courts should focus on "whether the force used was reasonable, not whether things turned out badly." *Rogers*, 944 F.3d at 969. Indeed, "[a]ny takedown can go awry—some suspects fall clumsily, while

---

[8] In *Johnson*, the Seventh Circuit held that an officer who had taken down a handcuffed suspect who continued standing up despite orders to stay on the ground was entitled to qualified immunity notwithstanding the fact that the suspect suffered a compound fracture of one of his legs because of the takedown. *Johnson*, 944 F.3d at 967–69.

others have fragile bones—but, if the officers use steps reasonably likely to effect a clean takedown, an injury does not lead to liability." *Id.* & at 970 ("That such [a takedown] causes injury, perhaps because poorly executed, does not lead to liability."); *Sow*, 636 F.3d at 304 (holding that an officer did not use excessive force when he pushed an arrestee into a police car despite the fact that the push caused the arrestee to bump his head).

> D. **Suggs Has Failed To Identify A Closely Analogous Case That Clearly Establishes His Right To Be Free from The Type of Force That Koeppen Used.**

As stated above in Section III(A), Suggs has the burden of showing that Koeppen's use of Force violated clearly established law by either: (1) identifying a closely analogous case that established the right to be free from the force that Koeppen used on him; or (2) showing that Koeppen's use of force was so plainly excessive as an objective matter that he would have been on notice that he was violating the Fourth Amendment. *Cibulka*, 992 F.3d at 639. In short: "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Tousis*, 84 F.4th at 698 (cleaned up). Suggs has failed to meet his burden on this point.

To begin, the cases that Suggs claims are "closely analogous" are, in fact, materially distinguishable because the plaintiffs in those cases[9] (in contrast to Suggs):

- did not engage in active resistance to arrest (*Becker*; *Abbott*; *Phillips*; *Holmes*);
- made no attempt to evade arrest by fleeing (*Becker*; *Phillips*; *Holmes*);
- did not engage actions that called for the officers to make a split-second decision about the use of force (*Becker*; *Abbott*; *Phillips*);

---

[9] *See Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706 (7th Cir. 2013); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012); *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673 (7th Cir. 2007).

16

- did not engage in any conduct suggesting to the officers that they were armed, or which posed an immediate threat to the officers (*Becker*; *Phillips*; *Holmes*);

- did not engage in aggressive behavior towards the officers (*Becker*; *Holmes*); and

- were subjected to additional, significant force while either subdued and lying immobile (*Abbott*), lying motionless with no reaction aside from crying out in pain to the initial use of force (*Phillips*), or surrendering without resistance (*Becker*; *Holmes*).

*Becker*, 821 F.3d at 927–29 & n.2; *Abbott*, 705 F.3d at 730, 732–33; *Phillips*, 678 F.3d at 524–26; *Holmes*, 511 F.3d at 686–87.[10]

Finally, the precedent and persuasive authority cited above in Section III(C) precludes the possibility of Suggs establishing that the force used by Koeppen was so plainly excessive as an objective matter that he would have been on notice that he was violating Suggs's constitutional rights. *See, e.g.*, *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) ("In the absence of controlling or persuasive authority, plaintiffs can demonstrate clearly established law by proving that the defendant's conduct was 'so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully.'") (cleaned up).

In sum: Suggs has failed to show that he had a clearly established constitutional right to be free from this type of force and Koeppen is entitled to qualified immunity on plaintiff's excessive force claim.

---

[10] Suggs cites two other factually inapposite cases where there were disputed issues of material fact. *See Ferguson v. McDonough*, 13 F.4th 574, 577–78, 583–84 (7th Cir. 2021) (finding genuine issues of material fact, including whether the plaintiff was either actively resisting arrest or was simply standing next to his car with his hands in the air in surrender at the time he was tased); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862–63 (7th Cir. 2010) (finding genuine issues of material fact, including how many times the defendant officer tased plaintiff, and explaining that there was no evidence plaintiff was armed or could access a weapon).

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment, (Dckt. #70), is granted and plaintiff's motion for summary judgment, (Dckt. #73), is denied.

**Date: January 22, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**